Our third case this morning is number 2414-08, REGENXBIO v. Sarepta Therapeutics. Ms. Morrison? Good morning, Your Honors, and may it please the Court. The District Court's decision here must be reversed on a straightforward application of Chakrabarty, of Myriad, and of A&P. The claims that the 617 patent had issued in this case are composition of matter claims, and they require an artificial, genetically engineered, cultured host cell that includes an artificial, genetically engineered, recombinant nucleic acid molecule, which has nucleic acid material from two organisms chemically joined together into a single new nucleic acid molecule. It is undisputed between the parties that neither the cultured host cell nor the recombinant nucleic acid molecule previously existed in nature were the work of the inventors. And Sarepta's experts admitted that, and we have the sites in our brief, but in particular, Sarepta's experts were asked at their deposition whether the cultured host cells, the features required by the asserted claims existed in nature. And the answer given was no. Let me tell you what I see the problem is here. I mean, I think you make a good point that Funk Brothers was different in this case. Let's put Funk Brothers aside. And it seems to me that you make a good case that the use of this Rh10 vector for the use in gene therapy was an invention which would be one-on-one eligible. The problem that I see is that the claim is so much broader than that. Indeed, it seems to cover, and I think the library talks about this, all sorts of possible uses of the Rh10 vector together with some other gene sequence for purposes that are unknown at this point. So why under certain, I mean, one of the main purposes of one-on-one is to prevent preemption and to confine the inventor to what was invented. Why shouldn't this be a situation in which the invention is limited to the use of the Rh10 vector in gene therapy rather than the broad claim of any Rh10 vector attached to some other undefined thing which might be useful in some undefined situation? So what's the answer to that? Why should the breadth of this claim be accepted? So, Your Honor, the claims, the different functions that we listed in our briefing and that we talked about, using a bacterial cell to create multiple copies of plasmids, using mammalian cells to create gene therapies, which is the function Your Honor just talked about, using mammalian cells to create capsid proteins, which can be used for diagnostics, and using mammalian cells to create empty capsids. All of those relate in some way to gene therapy. The bacterial cells create these capsid, or excuse me, create these additional plasmids, which can then be put into mammalian cells, and those mammalian cells can be used then either to create a complete gene therapy So why not require a method claim that describes those uses rather than just saying that any Rh10 attached to anything which isn't an AVP is patentable? An incredibly broad claim that would reach things that are unknown at this point. Well, Your Honor, I don't think it's an incredibly broad claim. I understand what you're saying, but I don't think it's incredibly broad, because it is a new composition of matter that's different than what was in nature, and that's really the question. Because this case requires that Rh10 capsid protein sequence, which did exist in nature before, to be chemically joined to something else. But it can be anything that's not an AVP. That's correct. It can be any sequence that is not an AVP. It sounds almost as though it's a way to overcome myriad, is to say, well, the isolated Rh10 wouldn't be capable, but if we say it's attached to something else, covering the whole world, then it suddenly becomes patentable. Well, it's not covering the whole world, because it then has to be put into this cultured host cell, and as we describe in our brief, that cultured host cell does have those four functions that I was just talking about. But respectfully, Your Honor, myriad is much less patentable than this invention, because in myriad, the gene at issue, the cDNA claims in myriad, the gene at issue, the claims at issue, required taking pieces from, two different pieces from the same gene and joining them together. And the Supreme Court said that was patentable. If we take two pieces from the same gene and join them together, that's patentable. Here, the inventors took a piece of DNA from the AAV Rh10 virus, and they joined it to a non-AAV set of plant acids. Any non-AAV plant? That's correct, Your Honor, any non-AAV. But it's a non-AAV set of nucleic acids. It can't be AAV. And there is evidence where AAV Rh10 is joined to AAV2, for example. Now, the claim does say it has to be heterologous. Yes. What does that mean? Heterologous means it's from a different organism. It's not AAV. Correct. It cannot be from any AAV, not just AAV Rh10, but any AAV. I have a question also about that first phrase, the AAVVP vector, I guess, vector protein, one capsid protein. Yes. Is that the shell? Do I understand that correctly? It is. It is. So the capsid, the AAV virus, I don't know if you've seen pictures of coronavirus. It sort of looks like a ball. The outside of the virus is this ball of proteins called a capsid. And the claim requires one of the proteins, the VP1, and one requires VP1, which is one of the capsid proteins, that forms this protein ball. It requires the sequence of that capsid protein, which is why the claim is broader than just gene therapy, because those capsid proteins, those cells, have uses. And then the empty capsid, without anything in it, without a gene in it for gene therapy, those have uses. And then, of course, the gene therapy itself has uses. And the bacterial cells that can be used in the process of making all of these things, those have uses. That's why the claim is broader than just the gene therapy, because there are a variety of cells that have a variety of uses. One of the things that the district court judge said below was that the claim did not expressly recite those functions that you talked about that are clear from the specification. Do you know if our case law requires the claim to recite those functions? It does not. Does the Supreme Court case law require it? It does not. And, indeed, myriad, there is no function recited in those CDNA claims. The Supreme Court held those to be patentable. And I believe it is undisputed between parties that myriad only requires markedly different structure. It does not also require markedly different function. Okay, but the marketing, so to the extent that you're relying on unclaimed functions, that doesn't really help in here. I mean, you have to put your eggs in the markedly different structure basket, right? Well, so I have two answers to that, Your Honor. One, the case law does not require the markedly different function to be in the claim. Yeah, but generally under 101, there's a large body of case law saying that you can't say something is 101 eligible because of things that you didn't put in the claim. I think that those are largely method claims, Your Honor. It's a general principle. I mean, it strikes me as that would be pretty unusual to say that you can say that something is 101 eligible because it has a function that wasn't in the claim. Does myriad have the function? It does not. Does Chakrabarti have the function? It does not. Chakrabarti describes it. I'm sorry. I was just going to ask, does Chakrabarti, do I remember that it also talked about remarkably different structure and remarkably different function? It does talk about both. But in Chakrabarti, there were a number of plasmids that were transferred. But in Chakrabarti, there was a function aspect to the claim. I don't agree, Your Honor. The plasmids, what the plasmids had to encode was described in the same way as the claims here describe the plasmid must encode, or the DNA molecule must encode the AAVRH10 capsid protein sequence. But in Chakrabarti, it didn't require that the bacteria had to be able to do the thing in the end. It simply said that the plasmids must encode these different elements of breaking down glucose. And so the myriad, I think, just stepping back for a minute, myriad says, and Srebnick concedes at page 32 of their brief, myriad is very clear that remarkably different structure is all that's required. Well, that may well be true, but that doesn't mean that you can say that if the structure is the same, that some unclaimed function makes it patentable. That's the only point that I'm making to you. And understood, Your Honor. And I'm not saying that some unclaimed function makes this patentable. I'm saying that these claims do allow for a markedly different function than the AAVRH10 capsid protein sequence. We have not claimed the AAVRH10BP1 capsid protein sequence. We did not claim an isolated capsid protein sequence. Instead, we claimed taking that, putting it in something else, and then putting it into a host cell. In the same way that Chakrabarti took four different plasmids and he used a natural process called bacterial conjugation to put those four plasmids into a single pseudomonas. The pseudomonas was natural, and all those plasmids were natural, and the process he used was natural. And he created something that was structurally new by using all those natural pieces. In the same way, and actually in a more patent-eligible way, the inventors here genetically engineered a capsid protein sequence to something else. They chained them together chemically to create a new molecule, and then they put it into a host cell. It was something that was a new composition of monomer that did not exist before the inventors created it. And I think, additionally, this Court's decision in AMP versus USPDO, which was a decision that was not appealed to the Supreme Court, a portion of that decision that was not appealed to the Supreme Court in Marriott, is very similar. There, there were host cell claims, and the Court found that those host cell claims recited a screening method, but they were premised on the use of transformed host cells. And those cells, I'm quoting from the Court, like the patent-eligible cells in Chakrabarti are not naturally occurring. Rather, they are derived by altering a gene, a cell to include a foreign gene, which is exactly what the inventors did here. These cells would not have included the AABRH10 capsoprotein gene until the inventors transformed them. I see I'm in my rebuttal time, so unless the Court has questions, I'd like to restart the reading time.  Thank you. Mr. Wilson? May it please the Court. To understand the claims in this case, all we have to do is look at the title of the patent. The application of these two methods for detecting AAB sequences and isolating those sequences. Aren't we supposed to be looking at the claim to figure out what the claim is directed to and not the title? Yes, you are. Okay. And these are claims to an isolated, naturally occurring RH10 sequence, which has nothing else patentable added onto the claim. Actually, doesn't the claim also recite having another part in the claim, another element in the claim? Yes, and reading other elements. All of those elements are admittedly conventional and well-known. What we have here is an attempt to sidestep Myriad by taking a patent application with the named inventors isolated and naturally occurring RH10 sequences. I don't understand that answer. I mean, insofar as the use of the host cell, that's true. But in terms of combining the RH10 with some other genetic sequence, that's not conventional. Yes. I do think that under the Brackett case and the Roche case, you make the case about injecting it into the cell as being conventional and not making it one or one element. But let's put that aside because it also says that the RH10 vector is going to be combined with something else which is not an AAB. Right. That's not conventional. It is conventional to combine a non-AAB sequence, any other sequence in the world, with a naturally occurring sequence. Those were admissions from the named inventors as well as Regenexx Bio's technical experts. Why isn't that an obviousness? Because conventionality goes to the point of when you take a look at the claims and you've got this naturally occurring sequence, what's going on here? The claims aren't reciting a practical application. They're reciting generic conventional elements. Under the Supreme Court's decision in Myriad, aren't they reciting a composition of matter? Well, they are reciting a composition of matter. Why isn't that enough for eligibility? Whereas when we start looking at how this is so broad, it's conventional, it's known to combine this, to do exactly what's in this claim, why isn't that something that you would consider under obviousness or anticipation doctrines in patent law? No, but it also applies to patentability because when we're looking for markedly different characteristics, we're looking for something that's not just non-natural. I thought you were looking for markedly different characteristics than what is natural, not markedly different characteristics from the prior art. Right, and the question is whether these additional elements add anything that's markedly different structurally or functionally from the naturally occurring sequence itself. So that's correct. So we're starting with the RH10 naturally occurring sequence. Then the question is, are these additional elements adding something markedly different? As you were talking about earlier, here there are no markedly different functional characteristics because all of the asserted functional characteristics are not defining features of the claims. And so they're irrelevant. Suppose they had drafted a method claim which said the use of RH10 in gene therapy as a vector to introduce genetic material into cells. Would that be patent eligible? I think that's a very different claim from what we have here. Yeah, but that wasn't my question. Would that be patent eligible? By reciting a practical application of the RH10 sequences, then I think we're working in a practical application, or a patentable range, that yes, that is something that would be patentable. But here we don't have that. We don't have a markedly different function. So it's an over-claiming situation. It is an over-claiming situation. There may be situations, and I think that the district court recognized this in its opinion, there may be situations, and there are claims that recite naturally occurring things all the time, that are patent eligible. But here we have such broad, high-level elements that are just added on to the naturally occurring sequence. It's essentially an attempt to monopolize the sequence as a myriad. How do you distinguish myriad? Well, I don't distinguish myriad. The claims that were found eligible in myriad. I don't distinguish myriad. I think myriad helps us understand the claims in this case. So the claim in myriad was to an isolated DNA. I think that if you look at the additional elements in these claims, they are so broad that all they really say is that the Rh10 sequence has been isolated. In other words, the cultured host cell and attaching it to a non-AAB sequence means that the naturally occurring sequence has been taken out of its natural environment. You agree that the cultured host cell and the recombinant and clade acid molecule did not exist in nature, right? I think that they are not natural. I mean, your experts, three of your experts agreed, right? Exactly. I mean, it's very hard for you to not say yes to my question. So yes, a cultured host cell and a non-AAB sequence attached to a naturally occurring sequence, the Rh10 sequence here, those are non-naturally occurring things. But I don't get that same thing. Why did that end the inquiry? Why not the Supreme Court's decision in myriad? Exactly, because I don't think that that's the standard. It's markedly different characteristics. And the court in myriad said isolated DNA is a non-naturally occurring thing. But why is a markedly different structure sufficient? They identify this as an issue in myriad. They say that the isolated DNA sequences are a non-naturally occurring molecule. And they recognize that in the Supreme Court's decision. But they say that the breaking of chemical bonds and removing something from its natural environment is not enough. And so myriad helps us because, essentially, the claimed cultured host cells are basically reciting a naturally occurring sequence. It's got some unspecified other sequence that doesn't necessarily have any functional relationship to that added on. And then that DNA is put in, essentially, a cultured host cell, which is containing it. It's basically just saying the naturally occurring sequence has been taken out of the environment and is being stored in a cultured host cell. And so myriad, the reasoning in myriad exactly tracks these claims because myriad is saying, just because it was naturally occurring, there was mere isolation, right? Mere isolation. And in this case, there's no dispute that the cultured host cell did not exist in nature, right? Again, there's no dispute that the cultured host cell did not exist in nature. I understand your point that it's broad, which might go more to enablement or obviousness or anticipation, right? I mean, are those defenses being presented in this case? No, because they're not presented in this case. But under Intermeo, under 101, you do look at the breadth of additional claim elements in order to understand whether there's something markedly different, whether the characteristics are markedly different. We also have to look at whether the structure is markedly   We can look at the structure. We can look at the function. Does it matter to you at all that they're really focusing on that capsid protein, like the shell? Well, the DNA, there's no shell that's actually claimed. Sure, sure. So it's the DNA encoding the capsid shell. So no, I mean, it's a naturally occurring DNA, which falls squarely under Myriad, that is the Rh10 sequence. So that sequence encodes a capsid protein, but there's no protein that's recited in that. Your Honor, you asked earlier if there were any cases that talked about whether or not functional characteristics had to be a defining feature of the claims. And there absolutely are cases. This court's case in Chromadex, which is cited in our brief, talks about functional characteristics having to be elements of the claims. And in fact, in that case, the functional characteristic was enhanced by bioavailability. And the court here said that the claims do not necessarily require enhanced bioavailability, so that that functional characteristic is not relevant to the patentability inquiry. Because the claims ran on milk. Because the claims were too broad. They didn't include that alleged functional characteristic. Do you have anything like milk that these claims read on? I'm sorry? Do you have anything like a natural product that these read on? The naturally occurring sequence is the Rh10 sequence. So your view is that because the language, heterologous non-ADP sequence is so broad, we should just act as if that language is not even in the claim. I don't think we should act as if the language is not in the claim, but I do think that we ought to take a look at that language and under Mayo, identify whether or not that recites or identifies any markedly different characteristics beyond just being an isolated DNA. So attaching a heterologous non-ADP DNA is not markedly different from isolating the DNA, taking it out of its natural environment. Same thing with the claimed cultured host cell. Claimed cultured host cell is a container for this naturally occurring DNA sequence. And so there's no markedly different structural or functional characteristic there under the Mayo test, which is talking about appending conventional elements at a high level of generality to a natural product, a natural law, or an abstract idea. And those things are not patentable under Mayo. Unless the Court has any further questions. OK. Thank you. Ms. Morrison. Thank you, Your Honor. So beginning where closing counsel left off, the markedly different test is not about whether each piece of the claim is markedly different from what's in nature. It's about whether the composition as a whole is markedly different than what is natural. And in the Chromidex case, the reason the Court moved to function, as Your Honor noted, is because the structure of the claim in Chromidex was broad enough to read on natural milk. Here, that is not the case. The structure here is not broad enough, as Sarepta has admitted, to read on anything that is natural. And so that's why Chromidex went to function.  But the claim here seems to cover almost any use of Rh10, together with another genetic sequence, right? It covers the use of the Rh10 sequence if it has been chemically joined in a single molecule. To anything else. To anything else. But that does not cover any use of Rh10. You could chemically join the Rh10 molecule to another sequence from AAV, which is done, a different AAV. And it also requires putting that new molecule into a cultured host cell. So, for example, the prosecution history reflects this. But it covers uses of Rh10 that go beyond gene sequencing, right? Beyond gene therapy, Your Honor. Gene therapy. It covers functions of Rh10 that are all within the gene therapy umbrella. It covers... Well, yes, yes. It covers any use of Rh10 together with anything which isn't an AAV, right? It covers... If they have been chemically joined together in a single molecule. So it covers inventions that haven't been made yet. I don't think that's quite right, Your Honor. I mean, certainly the inventors... Well, it's that long. Certainly the inventors have not chemically joined Rh10 to every other sequence in the world. But it doesn't cover all uses of Rh10. And the question of preemption is not whether there is some removal of the use of what's invented. The question is whether there's improper preemption. And here, the inventors do not... Well, improper preemption is directed to covering things that haven't been invented yet. And the breadth of this claim seems to extend that far. Well, I think, Your Honor, that improper preemption is intended to cover whether they have improperly removed the natural thing, the work of nature, the Rh10 sequence from use. And here, that's simply not the case, because there are other uses of Rh10 that's directed to engage in, for example, using the actual virus, putting the virus into an animal for replication as opposed to a cultured host cell, attaching the Rh10 sequence to another sequence from AAV. All of that is outside the claims and would not be covered. And so there is no preemption. Okay, unless there are further questions. Thank you. Thanks for the counsel.